IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

---

|  |  |  |
|---|---|---|
| VOESTALPINE USA CORP. BILSTEIN COLD ROLLED STEEL LP, | : : : | |
| Plaintiffs, | : : | Consol. Court No.  20-03829 |
| v. | : : : | |
| UNITED STATES, | : : : | |
| Defendant. | : : : | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Of Counsel:
Anthony Saler
Assistant Division Chief
Kenneth S. Kessler
Senior Counsel
Office of the Chief Counsel
Bureau of Industry and
Security
U.S. Department of
Commerce

Yelena Slepak
Senior Attorney
Office of the Assistant Chief
Counsel
International Trade Litigation
U.S. Customs and Border
Protection

April 19, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

TARA K. HOGAN
Assistant Director

AIMEE LEE
Assistant Director
Department of Justice
Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
Tel: (212) 264-9253

*Attorneys for Defendant*

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.  The Request For Exclusion From Section 232 Duties And Commerce's Role ................ 2

    B.  The Exclusion Request And CBP's Role .......................................................... 3

    C.  The Exclusion Request And The Importer's Role ............................................ 5

    D.  Plaintiffs' Actions In This Case ..................................................................... 6

ARGUMENT ............................................................................................................... 8

    I.      THE COURT SHOULD DISMISS THIS CASE FOR LACK OF
          JURISDICTION ................................................................................... 8

          A.  28 U.S.C. § 1581(i) Jurisdiction Is Not Available When A Remedy Is Manifestly
              Adequate Under 28 U.S.C. § 1581(a) ................................................... 8

          B.  CBP Made A Decision To Assess The Two Entries With Section 232 Duties That
              Plaintiffs Could Have Protested ........................................................ 10

          C.  Plaintiff's Challenge To Commerce's Exclusion Decision Does Not Give Rise To
              Jurisdiction Under 28 U.S.C. § 1581(i) ................................................ 14

    II.     PLAINTIFFS ARE NOT PREJUDICED BY THE ALLEGED AGENCY
          ERROR ........................................................................................... 16

    III.    PLAINTIFFS' STATED CLAIM DOES NOT LEAD TO THE REFUND OF
          SECTION 232 DUTIES ........................................................................ 20

CONCLUSION ........................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Nat. Fire Ins. Co. v. United States*,
441 F. Supp. 2d 1275 (Ct. Int'l Trade 2006) ........................................................................ 17

*Aspects Furniture Int'l, Inc. v. United States*,
Consol. Court No. 18-00222, 2021 WL 1329449 (Ct. Int'l Trade April 9, 2021).................... 17

*Borusan Mannesmann Pipe U.S. Inc. v. United States*,
Court No. 20-00012, 2020 WL 3470104 (Ct. Int'l Trade June 25, 2020) ............................... 14

*Chemsol, LLC v. United States*,
755 F.3d 1345 (Fed. Cir. 2014).............................................................................................. 14

*Corus Staal BV v. United States*,
493 F. Supp. 2d 1276 (Ct. Int'l Trade 2007) .......................................................................... 9

*Cummins Engine Co. v. United States*,
83 F. Supp. 2d 1366 (Ct. Int'l Trade 1999) ........................................................................... 17

*Doe v. Dep't of Justice*,
753 F.2d 1092 (D.C. Cir. 1985)............................................................................................. 23

*Hartford Fire Ins. Co. v. United States*,
544 F.3d 1289 (Fed. Cir. 2008)............................................................................................... 9

*Howard v. United States*,
949 F. Supp. 2d 54 (D.D.C. 2013) ......................................................................................... 16

*Intercargo Ins. Co. v. United States*,
83 F.3d 391 (Fed. Cir. 1996).................................................................................................. 17

*JSW Steel (USA) Inc. v. United States*,
466 F. Supp. 3d 1320 (Ct. Int'l Trade 2020) .......................................................................... 14

*Martinez v. United States*,
333 F.3d 1295 (Fed. Cir. 2003).............................................................................................. 15

*Norsk Hydro Can., Inc. v. United States*,
472 F.3d 1347 (Fed. Cir. 2006).............................................................................................. 9

*Sea-Land Serv., Inc. v. United States*,
735 F. Supp. 1059 (Ct. Int'l Trade 1990) ............................................................................... 17

*Shinyei Corp. of Am. v. United States*,
    355 F.3d 1297 (Fed. Cir. 2004) ........................................................ 12, 13, 22

*Sunpreme Inc. v. United States*,
    892 F.3d 1186 (Fed. Cir. 2018) .................................................................. 8

*Suntec Indus. Co. v. United States*,
    857 F.3d 1363 (Fed. Cir. 2017) ................................................................ 17

*Theodore Roosevelt Conservation P'Ship v. Salazar*,
    744 F. Supp. 2d 151 (D.D.C. 2010) .......................................................... 16

*United States v. U.S. Shoe Corp.*,
    114 F.3d 1564 (Fed. Cir. 1997) ................................................................ 12
    523 U.S. 360 (1998) ......................................................................... 12, 22

*Vermont Yankee Nuclear Power Corp. v. NRDC*,
    435 U.S. 519 (1978) ............................................................................. 17

## Statutes, Regulations, and Rules

5 U.S.C. § 704 ........................................................................................ 14

5 U.S.C. § 706(2)(a) ................................................................................. 15

19 U.S.C. § 1504(b)(2) ............................................................................. 20

19 U.S.C. § 1514 .................................................................................. 7, 21

19 U.S.C. § 1514(a)(2) .............................................................................. 11

19 U.S.C. § 1862 ...................................................................................... 1

28 U.S.C. § 1581 ................................................................................... 8, 9

28 U.S.C. § 1581(a) ........................................................................... *passim*

28 U.S.C. § 1581(i) ..................................................................... 8, 9, 14, 16

28 U.S.C. § 2636(i) ............................................................................. 14, 15

28 U.S.C. § 2640(e) ................................................................................. 15

19 C.F.R. § 159.12 ................................................................................... 20

iii

15 C.F.R. Pt. 705, Supp. 1 (effective Mar. 19, 2018) .................................................. 2, 3

15 C.F.R. Pt. 705, Supp. 1(c)(2) (effective Mar. 19, 2018) .......................................... 3, 18

15 C.F.R. Pt. 705, Supp. 1(f)(1)(A) (effective Mar. 19, 2018) ..................................... 3, 18

15 C.F.R. Pt. 705, Supp. 1(f)(2)(B)(2) (effective Mar. 19, 2018) ................................... 3

15 C.F.R. Pt. 705, Supp. 1(f)(3) ..................................................................................... 3, 10

15 C.F.R. Pt. 705, Supp. 1 (effective Sept. 11, 2018) ................................................... 16

USCIT Rule 12(b)(6) ...................................................................................................... 23

**Other Authorities**

*Proclamation 9705, Adjusting Imports of Steel Into the United States*,
83 Fed. Reg. 11,625 (Mar. 8, 2018) .................................................................. 2, 3, 12

*Proclamation 9777, Adjusting Imports of Steel Into the United States*,
83 Fed. Reg. 45,025 (Aug. 29, 2018)..................................................................... 11, 12

U.S. Customs and Border Protection, Cargo Systems Messaging Service,
CSMS # 18-000352 – Submitting Imports of Products Excluded from Duties on Imports of
Steel or Aluminum (May 21, 2018) .......................................................... 4, 5, 11, 19

U.S. Customs and Border Protection, Cargo Systems Messaging Service,
CSMS # 18-000378 – UPDATE: Submitting Imports of Products Excluded from Duties on
Imports of Steel or Alumin (June 12, 2018) .................................... 4, 5, 7, 11, 18, 19

U.S. Customs and Border Protection, Cargo Systems Messaging Service,
CSMS # 39633923 – UPDATE: Submitting Imports of Products Excluded from Duties on
Imports of Steel or Aluminum (Sept. 3, 2019) .......................................... 4, 5, 11, 19

U.S. Customs and Border Protection, Cargo Systems Messaging Service,
CSMS #42566154 – Section 232 and Section 301 – Extension Requests, PSCs, and Protests
(May 1, 2020)........................................................................................... 5, 6, 11, 19

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:      THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

———————————————————————                    :
VOESTALPINE USA CORP.                       :
BILSTEIN COLD ROLLED STEEL LP,              :
                                            :
                    Plaintiffs,             :      Consol. Court No.  20-03829
                                            :
              v.                            :
                                            :
UNITED STATES,                              :
                                            :
                    Defendant.              :
———————————————————————                    :

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, the United States, respectfully submits this reply in response to plaintiffs'

Voestalpine USA Corp. (Voestalpine) and Bilstein Cold Rolled Steel LP (Bilstein), (collectively

plaintiffs), response to our motion to dismiss.

## INTRODUCTION

Through this consolidated action, plaintiffs seek to obtain a refund of Section 232 duties[1]

paid on their entries of steel. Plaintiffs claim that they paid the Section 232 duties as the result of

an approved exclusion that neither plaintiffs nor Commerce realized contained an invalid tariff

number.  Despite not knowing of the error in the exclusion, plaintiffs did not follow the

procedures established by CBP and did not seek to use the exclusion.  Accordingly, CBP

liquidated the entries as they were entered by plaintiffs, with Section 232 duties.

Viewed in its relevant context, plaintiffs' claim is against CBP's assessment of Section

232 duties on their entries, which is a protestable decision.  Commerce's approval of an

---

[1]  Section 232 duties are duties assessed pursuant to Section 232 of the Trade Expansion Act of
1962, 19 U.S.C. § 1862.

exclusion with an invalid statistical tariff number neither prevented nor precluded plaintiffs from attempting to use the exclusion, or requesting an extension of liquidation when plaintiffs realized there was an issue with the exclusion, or filing a protest following the liquidation of the entries. The fact that the exclusion was corrected in January 2021, but plaintiffs could not apply it to the entries at issue, is not the result of actions taken by Commerce or CBP, but is wholly the result of plaintiffs' failure to protect their interest in a refund of Section 232 duties by keeping their entries open.

## **BACKGROUND**

A more fulsome discussion of the background is set forth in our moving papers and we do not repeat that discussion here.  However, we wish to clarify that obtaining and applying an exclusion from Section 232 duties is a three-step process that involves two agencies and the importer.  Commerce and CBP perform integral, separate roles that are important to understanding this case.  The importer also has the responsibility to take steps to claim exemption from Section 232 duties.  Accordingly, we summarize the relevant points of the exclusion process and the distinct roles of Commerce, CBP, and the importer below.

A.   The Request For Exclusion From Section 232 Duties And Commerce's Role

To avoid payment of Section 232 duties, Commerce may approve a request for an exclusion "for any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." *Proclamation 9705, Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625, clause 3 (Mar. 8, 2018) (Proclamation 9705).  The regulations governing exclusion requests in effect at the time of plaintiffs' request were implemented on March 19, 2018.  15 C.F.R. Pt. 705, Supp. 1 (effective

Mar. 19, 2018).[2]  Relevant here, when an importer submits a request, "the submission must include the submitter's name, date of submission, and the 10–digit Harmonized Tariff Schedule of the United States (HTSUS) statistical reporting number."  *Id*. at (c)(2).  The exclusions are approved on a product basis and are limited to "the individual or organization that submitted the specific exclusion request."  *Id*.  If the submitted request does not satisfy the baseline submission requirements outlined in the regulations, Commerce will deny the exclusion request as incomplete.  *Id*. at (f)(1)(A)[3] (referencing paragraph (b)).

Commerce reviews the submission, along with any objections to the exclusion request, to determine whether the product is not produced in the United States in a sufficient and reasonably available amount.  If there are no objections, Commerce will approve the request.  Five business days after the posting of the grant of the exclusion, the requester may rely upon the request.  *Id*. at (f)(1)(B)(2).

B.  The Exclusion Request And CBP's Role

Once Commerce grants an exclusion request to an importer, the importer "shall provide any information that may be required, and in such form, as is deemed necessary by CBP."  Proclamation 9705, Annex (U.S. Note 16(d)).  This information enables "CBP to determine whether an import is within the scope of an approved exclusion request."  15 C.F.R. Pt. 705, Supp.1(f)(3).

---

[2]  Amendments to the regulations were subsequently implemented in September 11, 2018, just before Commerce approved the exclusion request at issue in this case on September 28, 2018.  Although plaintiffs claim that we ignore the revised regulations, Pls. Resp. at 10, it was the March 2018 version of the regulations that was applicable to Bilstein's exclusion request.

[3]  This subsection provides:
(f) Disposition of exclusion requests and objections to submitted exclusion requests.
(1) Disposition of incomplete submission.
(A) Exclusion requests that do not satisfy the reporting requirements specified in paragraph (b) of this supplement will be denied.

Consistent with the Proclamation and the regulations, CBP instituted certain requirements for importers to use approved exclusions.  CBP issued a series of CSMS Messages to the importing community detailing the specific procedures that needed to be followed to apply an exclusion to an entry.  CSMS No. 18-000352 (May 21, 2018)[4]; CSMS No. 18-000378 (June 12, 2018)[5]; CSMS No. 39633923 (Sept. 3, 2019)[6].  At the time plaintiffs' entries were made, the guidance in place directed exclusion holders to notify CBP of the granted exclusion by providing the exclusion number and the importer of record's information "before the importer of record submits the exclusion number with entries to CBP."  CSMS No. 18-000378.  In addition, exclusion holders were directed to include in their entry summary documents "the product exclusion number based on the last six digits of the product exclusion docket number" with the prefix "STL."  *Id.*  Recognizing that situations arise where an importer may claim an exclusion

---

[4] U.S. Customs and Border Protection, Cargo Systems Messaging Service, CSMS #18-000352 – Submitting Imports of Products Excluded from Duties on Imports of Steel or Aluminum (May 21, 2018), *available at*
https://content.govdelivery.com/accounts/USDHSCBP/bulletins/1f1986e?utm_source=google&utm_medium=google&utm_term=(not%20provided)&utm_content=undefined&utm_campaign=(not%20set)&gclid=undefined&dclid=undefined&GAID=145228974.1610464220 (last visited April 19, 2021).

[5] U.S. Customs and Border Protection, Cargo Systems Messaging Service, CSMS #18-000378 – UPDATE: Submitting Imports of Products Excluded from Duties on Imports of Steel or Alumin (June 12, 2018), *available at*
https://content.govdelivery.com/accounts/USDHSCBP/bulletins/1f6cce3?utm_source=google&utm_medium=google&utm_term=(not%20provided)&utm_content=undefined&utm_campaign=(not%20set)&gclid=undefined&dclid=undefined&GAID=145228974.1610464220 (last visited April 19, 2021).

[6] U.S. Customs and Border Protection, Cargo Systems Messaging Service, CSMS #39633923 – UPDATE: Submitting Imports of Products Excluded from Duties on Imports of Steel or Aluminum (September 3, 2019), *available at*
https://content.govdelivery.com/accounts/USDHSCBP/bulletins/25cc403?utm_source=google&utm_medium=google&utm_term=(not%20provided)&utm_content=undefined&utm_campaign=(not%20set)&gclid=undefined&dclid=undefined&GAID=145228974.1610464220 (last visited April 19, 2021).

subsequent to entry, CBP also included in the Messages information about various ways to seek to apply an exclusion post-entry.  *Id*.

        C.  <u>The Exclusion Request And The Importer's Role</u>

Approved exclusions do not automatically relieve an importer's Section 232 duty obligation.  To receive an exclusion from Section 232 duties, an importer must take action to apply its approved exclusion because an exclusion is importer and product specific.  CBP procedures in place when plaintiffs made their two entries in November 2018 required reporting of the exclusion to CBP and providing the importer of record listed in the approved exclusion, including the company's name, address, importer of record number, and the associated product exclusion number.  This information had to be provided prior to the actual importation of the particular product and before the importer of record submitted the exclusion number with its entries to CBP.  CSMS No. 18-000378.  Further, importers were instructed "not [to] submit the corresponding Chapter 99 HTS number for the Section 232 duties when the product exclusion number is submitted" with the entry documentation.  *Id*.

In the event an importer did not claim an exclusion at the time of entry, but desired to use an exclusion, CBP provided for post-importation options for claiming exclusions.  CBP's Messages consistently advised that, prior to liquidation, importers could file a Post Summary Correction (PSC) and provide the product exclusion number.  CSMS No. 18-000352; CSMS No. 18-000378; CSMS No. 39633923.  If the entry had already liquidated, importers could protest the liquidation.  *Id*.  Product exclusions granted by Commerce could be made retroactive for "unliquidated entries and for entries that are liquidated but where the liquidation is not final and

the protest period has not expired," so long as the importer took action by filing a PSC or a

timely protest to keep its entries from becoming final.  CSMS No. 42566154 (May 1, 2020)[7].

        D.  <u>Plaintiffs' Actions In This Case</u>

      Bilstein submitted an exclusion request (BIS-2018-0006-25363) with an invalid statistical

HTSUS number, 7225.30.0000.[8]  Exclusion req. BIS-2018-0006-25363, *available at*

https://beta.regulations.gov/document/BIS-2018-0006-25363 (last visited April 19, 2021), Exh.

A to Def. Motion.  Commerce granted the exclusion request with the invalid HTSUS number

without knowledge that the HTSUS number was in error.[9]  BIS Decision Memo on BIS-2018-

0006-25363 (Sept. 28, 2018), Exh. B to Def. Motion.[10]

      In their response, plaintiffs admit that they "became aware of the [HTSUS number]

problem in September 2019" (Pls. Resp. at 15), ten months after the entries were made, but

before liquidation in October, 2019.  Entry Documentation, Exh. C to Def. Motion.  Even though

plaintiffs were in possession of an approved exclusion that neither Commerce nor plaintiffs knew

contained an invalid tariff number, plaintiffs did not attempt to use the approved exclusion.

Plaintiffs did not notify CBP that they possessed an exclusion prior to the entry of the

---

[7]  U.S. Customs and Border Protection, Cargo Systems Messaging Service , CSMS #42566154 – Section 232 and Section 301 – Extension Requests, PSCs, and Protests (May 1, 2020), *available at*
https://content.govdelivery.com/accounts/USDHSCBP/bulletins/289820a?utm_source=google&utm_medium=google&utm_term=(not%20provided)&utm_content=undefined&utm_campaign=(not%20set)&gclid=undefined&dclid=undefined&GAID=145228974.1610464220 (last visited April 19, 2021).

[8]  Plaintiffs' original request also contained an erroneous importer of record. The request identified an importer of record that was not Voestalpine.  *See* Exh. A, Exclusion req. BIS-2018-0006-25363 and Exh. B, BIS Decision Memo on BIS-2018-0006-25363 (Sept. 28, 2018) to Def. Motion.

[9]  The HTSUS number provided was valid to the six-digit level.  *See* Def. Mot. at 11.

[10]  This document is also Exhibit 1 to Complaint 20-3840.

shipments.[11]  CSMS No. 18-000378.  When Voestalpine, the importer of record for the two

entries at issue, made the entries of steel (Entry Nos. HK8-5207919-1 and HK8-5207851-6), it

did not attempt to apply Bilstein's exclusion.  Instead, Voestalpine declared the entries as subject

to Section 232 duties, specifically including the Chapter 99 subheading on the entry

documentation.  Entry Documentation, Exh. C to Def. Motion.  Consistent with that

representation, Voestalpine deposited the Section 232 duties.  Without any indication from the

importer that an exclusion might apply, CBP liquidated the entries "as entered" with Section 232

duties on October 18, 2019.  *Id*.  Plaintiffs did not protest the liquidations and the liquidations

became final and conclusive upon the expiration of the 180-day protest period on April 15, 2020.

19 U.S.C. § 1514.

    In November 2020, more than six months after the liquidation of the entries became final,

Bilstein acted to correct the invalid HTSUS number contained in its original exclusion request by

filing a new request, which was essentially identical to the original but for the tariff number.

Exclusion Req. 155507, *available at*

https://232app.azurewebsites.net/Forms/ExclusionRequestItem/155507 (last visited April 19,

2021), Exh. D to Def. Motion.  Commerce granted the request on December 11, 2020.  BIS

Decision Memo on Exclusion Req. 155507 (Dec. 11, 2020), Exh. E to Def. Motion.  Bilstein

then requested that Commerce make its exclusion retroactive to July 10, 2018, the date of

submission of the original exclusion request (BIS-2018-0006-25363), which Commerce granted

on January 15, 2021.  BIS Decision Memo on Exclusion Req. 155507 (Jan. 15, 2021), *available*

---

[11]  Plaintiffs do not allege that they ever provided this information to CBP, and based upon
CBP's records, there is no indication that plaintiffs ever did so.

*at* https://232app.azurewebsites.net/Forms/ExclusionRequestItem/155507 (last visited April 19, 2021), Exh. F to Def. Motion.

For the reasons set forth below, based on the facts of this case, plaintiffs' complaints should be dismissed.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION

Plaintiffs have failed to meet their burden to establish jurisdiction under 28 U.S.C. § 1581(i).  This case should be dismissed because the subject of plaintiffs' challenge is CBP's decision to assess Section 232 duties at liquidation, and the relief sought is reliquidation of the entries with a refund of those duties.  Liquidation of plaintiffs' entries, however, is final and conclusive, and plaintiffs' attempt to assert section 1581(i) jurisdiction is therefore unavailing, as discussed below.

### A.   28 U.S.C. § 1581(i) Jurisdiction Is Not Available When A Remedy Is Manifestly Adequate Under 28 U.S.C. § 1581(a)

As clarified in their response, plaintiffs attempt to rectify their own failures by characterizing their claims as solely against Commerce to obtain the inappropriate remedy of reliquidation of their entries.  Section 1581(i) jurisdiction "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018).  Here, the relief sought is the refund of Section 232 duties. Pl. Resp. at 6.  Reliquidation of the entries would have been available had plaintiffs filed a timely protest, and this Court would have been able to exercise jurisdiction under section 1581(a) had CBP denied the protest.  Having allowed the protest period to expire, plaintiffs seek to lay blame for their payment of Section 232 duties on Commerce's 2018 approval of an exclusion

containing plaintiffs' erroneous tariff number.  That there was an error in the approved exclusion does not change the true nature of plaintiffs' cause of action – obtaining duty refunds – an area for which Commerce is not responsible and a remedy which is now foreclosed due to plaintiffs' failure to file a timely protest with CBP.

The "court cannot merely rely on [plaintiffs'] characterization of [their] action and must instead look to the 'true nature of the action' when determining jurisdiction." *Corus Staal BV v. United States*, 493 F. Supp. 2d 1276, 1285 (Ct. Int'l Trade 2007) (quoting *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006); *see Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008) (court rejected plaintiff's "artful pleading" where insurance company challenging bond enforceability asserted jurisdiction under 1581(i) after failing to file protest that would have triggered jurisdiction under 1581(a)).  "To determine the true nature of an action, the court identifies the particular agency action that is the source of the alleged harm, which in turn identifies the subsection of 28 U.S.C. § 1581 that provides the appropriate vehicle for judicial review." *Id*.

In this case, the harm alleged is CBP's assessment and collection of Section 232 duties, which plaintiffs now seek to undo.  Compl. (20-3840) Wherefore (a)-(c); *see also* Compl. (20-3829) Wherefore (a)-(c).  Although plaintiffs contend that the sole source of that harm is Commerce's approval of an exclusion with an invalid tariff number (Pl. Resp. at 23), Commerce is not the agency charged with deciding whether to assess duties; CBP is.  Thus, CBP's decision to assess Section 232 duties is the pertinent agency action here and the basis for the Court's jurisdiction.

**B.  CBP Made A Decision To Assess The Two Entries With Section 232 Duties That Plaintiffs Could Have Protested**

Plaintiffs maintain that section 1581(a) jurisdiction cannot lie because "Customs made no decision that would or could be challenged in a protest...."  Pls. Resp. at 23.  None of plaintiffs' arguments demonstrate that the protest procedure would have been manifestly inadequate.

First, plaintiffs assert that CBP's role is ministerial and that the agency makes no decision.  Pls. Resp. at 25.  However, a granted exclusion does not automatically apply to an entry and CBP's role in deciding whether the imported merchandise falls within an approved exclusion is not ministerial.  Commerce grants an exclusion to a particular importer for a specified product after the importer makes a request for a specified product, in a specified quantity, and that request is approved.  The importer then may elect (or not) to claim the exclusion for its entries.  In order to apply an approved exclusion (even one with an unknowingly invalid HTSUS number), importers must notify CBP and request to apply the exclusion to specific entries of an importer's particular product.  "Individuals or organizations whose exclusion requests are approved must report information concerning any applicable exclusion in such form as CBP may require."  15 C.F.R. Pt. 705, Supp. 1(f)(3) (effective Mar. 19, 2018).  This information is necessary for "CBP to **determine whether an import is within the scope of an approved exclusion request**."  *Id*. (emphasis added).

Plaintiffs nevertheless insist that taking any action with respect to its entries would have been futile because CBP cannot modify an exclusion.  Pls. Resp. at 14.  While CBP cannot alter an exclusion granted by Commerce, only CBP can determine whether a claimed exclusion applies to the merchandise covered by the entries before it, whether to assess Section 232 duties, or, if warranted, whether to postpone its decision on the assessment of Section 232 duties pending corrective action taken by the importer with Commerce.  The decision that CBP makes

when it assesses Section 232 duties is protestable under 19 U.S.C. § 1514(a)(2), which pertains to "the classification and rate and amount of duties chargeable."

Plaintiffs proffer conflicting excuses as to why they took no steps to claim the exclusion with CBP.  Plaintiffs admit that they were not aware of the HTSUS number problem until September 2019, yet also state that they did not assert the exclusion because the HTSUS number in their entries would not match up with the HTSUS number in the exclusion.  Pls. Resp. at 15.  Plaintiffs also claim that presenting the exclusion, as required by the CSMS Messages, would cause a rejection by CBP's ACE system because the HTSUS number on the exclusion would not match the HTSUS number on the entry.  Pls. Resp. at 16.  These arguments are clearly *post hoc* justifications for plaintiffs' failure to use the exclusion at entry and should not be countenanced in light of the plaintiffs' admission that they did not discover the HTSUS number error in the exclusion until nearly a year after the entries were made.

Had plaintiffs claimed the exclusion at entry and the HTSUS number did not match the entry documentation for their two entries, the claim for an exclusion would have been rejected and would have resulted in an error message, as plaintiffs note.  However, at that point, CBP and plaintiffs would have known that there was an error in the exclusion.  The importer could then have filed a PSC or requested an extension of liquidation and if the entries had already liquidated (and the protest period was still open), plaintiffs could have protested the liquidations.  As a practical matter, *any* of these actions would have prevented the liquidation of the entries with the assessment of Section 232 duties from becoming final and conclusive.

This was not obscure knowledge.  CBP repeatedly advised importers as to what they had to do if they wished to benefit from exclusion decisions.  *See* CSMS Nos. 18-000352; 18-000378; 39633923; and 42566154.  Further, Proclamation 9777 also notified importers that

exclusions would only apply to entries "with respect to which **liquidation is not final**," leaving

no doubt that importers needed to act to prevent their entries from liquidating or from liquidation

becoming final, if they wanted the exclusion to be applied after entry.   *Proclamation 9777,*

*Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 45,025, clause 5 (Aug. 29, 2018)

(amending clause 3 of Proclamation 9705) (emphasis added).

      *United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998) and *Shinyei Corp. of Am. v. United*

*States*, 355 F.3d 1297 (Fed. Cir. 2004), do not support plaintiff's argument that Section 1581(a)

jurisdiction was unavailable.   *See* Pls. Resp. at 25, 27.   In *U.S. Shoe*, the court examined whether

the payment of Harbor Maintenance Tax (HMT) on exports was a protestable decision.   The

court concluded that payment of HMT on exports did not involve a protestable CBP

determination such as a decision "involving the application of pertinent law and precedent to a

set of facts, *such as tariff classification and applicable rate of duty." U.S. Shoe Corp. v. United*

*States,* 114 F.3d 1564, 1569 (Fed. Cir. 1997) (emphasis added).   The Federal Circuit found that

CBP passively collected quarterly HMT payments which were calculated by the exporters, CBP

issued no directives or decision, and CBP imposed no liabilities.   *Id*.   Here, CBP was no mere

passive collector of taxes.   CBP issued directives as to what an importer needed to do to claim a

duty exclusion, and, in this case, in the absence of a valid exclusion being presented by an

eligible importer, for the proper product, and for the proper quantity, made a decision as to the

"tariff classification and applicable rate of duty."

      *Shinyei* similarly did not involve a protestable decision by CBP.   *Shinyei* challenged

liquidation instructions issued by Commerce to CBP in connection with an antidumping

investigation that followed an order issued by the Court of International Trade.   The court found

that "when the alleged error is with Commerce instructions . . . , not 'decisions of the Customs

Service' as to liquidation," entries that had been deemed liquidated could be ordered reliquidated by the court. *Shinyei*, 355 F.3d at 1311. In *Shinyei*, Commerce instructed CBP to liquidate certain entries, and generally those instructions are applied as a matter of course. The exclusion process at issue here differs in that even after an exclusion request is approved by Commerce, that importer must then actively use the exclusion with CBP and abide by certain procedures when it makes entry of the merchandise covered by the exclusion. CBP then decides whether the conditions of the exclusion are met and whether the exclusion applies to the merchandise covered by the entries or whether Section 232 duties should be assessed.

In this case, Voestalpine, as the importer of record, never claimed an exclusion from Section 232 duties and instead made entry claiming the opposite - that it owed Section 232 duties. Voestalpine provided entry documentation for the two entries with the Chapter 99 HTSUS tariff classification subject to Section 232 duties and deposited those duties with CBP. There was no suggestion that any Section 232 duty exclusion might apply. Based upon the information provided by the importer, CBP made a decision to assess Section 232 duties at liquidation. If plaintiffs disagreed with CBP's decision, they could have challenged that decision by filing a protest.

Plaintiffs plainly ignore that an importer-specific exclusion needs to be used by that importer, for the specific product and acceptable quantity designated in the granted exclusion, in accordance with CBP procedures for that exclusion to apply. If there had been a dispute concerning the applicability of an exclusion, the plaintiffs could have protested the liquidation of the entries or taken other actions, prior to liquidation, such as filing a PSC or requesting an extension of liquidation, to preserve their rights. Had plaintiffs done that, they would not be bringing this suit, but instead would have secured a refund of Section 232 duties, or if plaintiffs

protested and that protest was denied, they would have been able to file a suit with jurisdiction
properly under section 1581(a).

Plaintiffs had an adequate remedy via protest and therefore jurisdiction was available
under section 1581(a), not 1581(i).  "A belief that a plaintiff had no remedy under subsection
1581(a) does not make that remedy inadequate, and [plaintiffs] cannot take it upon themselves to
determine whether it would be futile to protest or not."  *Chemsol, LLC v. United States*, 755 F.3d
1345, 1355 (Fed. Cir. 2014) (citations and quotations omitted).

## C.  Plaintiffs' Challenge To Commerce's Exclusion Decision Does Not Give Rise To Jurisdiction Under 28 U.S.C. § 1581(i)

Section 1581(a) provides plaintiffs with a manifestly adequate remedy and, therefore,
jurisdiction under section 1581(i) is foreclosed.  Nonetheless, plaintiffs contend that the true
nature of their action "challenges the approval by BIS of an exclusion request with an invalid
HTSUS number, which is contrary to the applicable BIS regulations."  Pls. Resp. at 4.  Under
plaintiffs' theory, they are adversely aggrieved by the invalid tariff number in the exclusion
approved by Commerce.  BIS Decision Memo on BIS-2018-0006-25363 (Sept. 28, 2018), Exh.
B to Def. Motion; Pl. Resp. 3; 13.  Plaintiffs' argument fails for several reasons.

First, plaintiffs' asserted challenge is to Commerce's "final agency action," 5 U.S.C. §
704, which is the approval of the original exclusion request containing the invalid HTSUS
number.  To be clear, we do not generally dispute that under section 1581(i), this Court could
review a challenge to an exclusion decision by Commerce.  *See* Pls. Resp. at 26 (citing *JSW Steel
(USA) Inc. v. United States*, 466 F. Supp. 3d 1320 (Ct. Int'l Trade 2020) and *Borusan
Mannesmann Pipe U.S. Inc. v. United States*, Court No. 20-00012, 2020 WL 3470104 (Ct. Int'l
Trade June 25, 2020), two cases involving challenges to Commerce's denial of a Section 232
duty exclusion).  Actions pursuant to section 1581(i), however, must be brought within two years

of the accrual of the cause of action.  28 U.S.C. § 2636(i).  Two years from the date of

September 28, 2018 is September 28, 2020, and plaintiffs commenced these actions on

November 10, 2020 (20-3829) and November 23, 2020 (20-3840).  Judicial review and any

accompanying power for the Court to grant relief is therefore time barred.

    To the extent that plaintiffs complain that their resort to informal procedures or inquiries

"substantially delayed resolution of the problem for more than a year" (Pls. Resp. at 13), that

does not affect the running of the time to file suit in this Court.  As noted above, plaintiffs

clarified that the final agency action they are challenging is Commerce's decision to approve the

original exclusion.  Any informal procedures plaintiffs attempted to follow do not excuse

plaintiffs from taking action either to prevent liquidation of their entries from becoming final

while pursuing corrective action with Commerce, or from bringing a timely suit against

Commerce's erroneous approval of plaintiffs' exclusion, taking into consideration September

2019 as the time when plaintiffs became aware of the HTSUS number problem.  *Martinez v.

United States*, 333 F.3d 1295, 1306 (Fed. Cir. 2003) ("Congress did not authorize postponement

of the running of the limitations period while optional administrative remedies were being

exhausted.").

    Second, even had the challenge been timely, the relief available is limited.  The Court

may set aside agency action found to be "arbitrary, capricious or abuse of agency discretion."  5

U.S.C. § 706(2)(a); 28 U.S.C. § 2640(e).  Were plaintiffs to prevail, the Court could remand the

case with instructions to Commerce to take corrective action, by associating the exclusion with a

valid tariff number.  Significantly, plaintiffs have already received that relief, with application of

the exclusion retroactive to the date of the original exclusion request.  BIS Decision Memo on

Exclusion Req. 155507 (Jan.15, 2021), Exh. F to Def. Motion.  The corrected exclusion may still

be applied to any of plaintiffs' entries of merchandise subject to the exclusion for which liquidation is not final.  This would include plaintiffs' two entries if they had protected their own interests and followed the procedures outlined in the CSMS Messages.  Because Commerce does not administer approved exclusions, collect duties, or make refunds, a corrected and retroactive exclusion is the only relief that this Court could order in a challenge to Commerce's final agency action.  *See* 15 C.F.R. Pt. 705, Supp. 1 (effective Sept. 11, 2018) ("Commerce does not provide refunds on tariffs.  Any questions on the refund of duties should be directed to CBP.").

Because plaintiffs have already received relief regarding the agency action they challenge, there is no longer any live case or controversy and plaintiffs' challenge to the exclusion request is moot.  *See Theodore Roosevelt Conservation P'ship v. Salazar*, 744 F. Supp. 2d 151, 164-65 (D.D.C. 2010) ("[Plaintiffs'] claims concern a decision that has been superseded and thus ceases to have any effect . . . [a]ccordingly, [plaintiffs'] claims based on the [agency action] are moot."); *see also Howard v. United States*, 949 F. Supp. 2d 54, 57 (D.D.C. 2013) (dismissing as moot challenge to Department of Education's denial of student loan discharge where the agency subsequently discharged the loans and the court had no jurisdiction to award consequential damages).  Accordingly, because there is no live case or controversy, plaintiffs' claim against Commerce is moot.

Thus, section 1581(i) jurisdiction is unavailable for these additional reasons.

## II.   PLAINTIFFS ARE NOT PREJUDICED BY THE ALLEGED AGENCY ERROR

Even under plaintiffs' theory that Commerce's grant of an exclusion containing an invalid HTSUS number was incorrect, it was not prejudicial.  Plaintiffs repeatedly assert that Commerce "violated its own regulations" by approving an exclusion with an invalid tariff number.  Pls. Resp. at 12; *see also* Pls. Resp. at 13, 22, 23.  Plaintiffs believe that Commerce

"must deny a flawed exclusion request with an invalid HTSUS number."  Pls. Resp. at 12.

Commerce's erroneous exclusion approval, however, in consideration of the facts and

circumstances of this case, was not prejudicial.

"[C]ourts . . . apply conventional principles of harmless error when reviewing agency

action."  *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394 (Fed. Cir. 1996).  Accordingly,

"administrative action, like court decisions, should be set aside 'only for substantial procedural

or substantive reasons.'"  *Id*. (quoting *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S.

519 (1978).  Agency errors "are harmless unless the errors are 'prejudicial to the party seeking to

have the action declared invalid.'"  *Am. Nat. Fire Ins. Co. v. United States*, 441 F. Supp. 2d 1275,

1287 (Ct. Int'l Trade 2006) (quoting *Sea-Land Serv., Inc. v. United States*, 735 F. Supp. 1059,

1063 (Ct. Int'l Trade 1990)).  "When 'neither the statute nor the regulation specifies the

consequence of noncompliance' with a procedural requirement, the party seeking relief must

demonstrate that it suffered substantial prejudice as a result of the contested action."  *Aspects

Furniture Int'l, Inc. v. United States*, Consol. Court No. 18-00222, 2021 WL 1329449 at *16 (Ct.

Int'l Trade April 9, 2021) (quoting *Cummins Engine Co. v. United States*, 83 F. Supp. 2d 1366,

1378 (Ct. Int'l Trade 1999)).

Under a "traditional harmless-error analysis…the person seeking relief from the error has

the burden of showing prejudice caused by the error."  *Suntec Indus. Co. v. United States*, 857

F.3d 1363, 1368 (Fed. Cir. 2017).  In a situation where there is an intervening event between the

identified error and the alleged result, there may be no prejudice.  *Id*. at 1368-69.  Thus, for

example, in *Suntec*, the lack of requisite notice was found to be harmless and plaintiff suffered

no prejudice when intervening notice was given to the plaintiff.

Here, the source of the invalid tariff number began with Bilstein, the requestor of the exclusion.  The regulation required that "the submission must include…the 10–digit Harmonized Tariff Schedule of the United States (HTSUS) statistical reporting number." 15 C.F.R. Pt. 705, Supp. 1(c)(2) (effective Mar. 19, 2018).  The invalid tariff number was not discovered and Commerce approved Bilstein's exclusion request, although the regulation provides that "[e]xclusion requests that do not satisfy the reporting requirements specified in paragraph (b) of this supplement will be denied."  *Id*. at (f)(1)(A).

Plaintiffs blame Commerce's approval of their exclusion for causing their payment of Section 232 duties on their two entries of steel.  However, regardless of whether the approved exclusion contained a valid or invalid HTSUS number, it is clear from plaintiffs' actions that even though they possessed an approved exclusion, they never sought to use the exclusion to claim a duty exemption for their entries.

Plaintiffs had an approved exclusion that neither plaintiffs nor Commerce knew contained an invalid tariff number, but plaintiffs did not take any of the steps required to use it. Plaintiffs did not provide CBP the company's name, address, importer of record number, and the associated product exclusion number prior to their November 2018 entries.  *See* CSMS No. 18-000378.  Plaintiffs also did not list the product exclusion number with the prefix "STL" without providing the corresponding Chapter 99 HTSUS number indicating Section 232 duties on the entry summaries at the time of entry.  *Id.*; Entry Documents at Exh. C attached to Def. Motion. Instead, plaintiffs acted as though they did not possess, or were electing not to use, an exclusion. Plaintiffs submitted entry documentation specifying tariff subheadings with the accompanying Chapter 99 HTSUS number.  Plaintiffs deposited Section 232 duties and, after liquidation, plaintiffs did not protest the assessment of their entries with Section 232 duties.

Plaintiffs offer that they "did not assert Exclusion No. 25363 in November 2018 at the time of entry because the HTSUS number in the exclusion did not and could not match the HTSUS number in the exclusion to the entries." Pls. Resp. at 15. This statement is undermined by their contradictory admission that they "became aware of the problem in September 2019." Pls. Resp. at 15. This admission undermines and contradicts plaintiffs' argument that futility was the reason they did not use the exclusion in November 2018.

Moreover, any claim of futility is unavailing. We reiterate that plaintiffs could have attempted to use the approved exclusion for their entries. Plaintiffs are correct that the claim for an exclusion would have been rejected. Pls. Resp. at 16. In fact, had plaintiffs claimed the exclusion, the claim would have been rejected not only because of the invalid tariff number, but also because the importer of record on the original approved exclusion was not Voestalpine. *See* Exclusion Req. BIS-2018-0006-25363, Exh. A to Def. Motion. However, this is not the end. Had plaintiffs received a rejection notice, they would have known then (versus in September 2019) that they possessed a flawed exclusion and could have taken corrective action with Commerce and protective measures with CBP.

Further, contrary to plaintiffs' assertion, a rejection does not evidence that CBP does not make a judgment concerning the application of an exclusion. Pls. Resp. at 16. A rejection in this context signifies that there is no approved exclusion that CBP can use to evaluate the entries when making its decision whether to assess Section 232 duties. As outlined in CBP's numerous CSMS Messages, if an exclusion number is not provided at the time of entry for whatever reason, it may be provided to CBP via a PSC, and if the entry has already liquidated, the guidance instructs importers to file a protest to prevent the liquidation of their entries from becoming final. CSMS Nos. 18-000352; 18-000378; 39633923; and 42566154. Plaintiffs could

have also requested an extension of liquidation from CBP while they pursued their remedy with Commerce, namely the correction of the HTSUS number.  19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12.

Thus, while plaintiffs point to Commerce's approval of their exclusion when it should have rejected it as their central complaint, Commerce's mistake did not prevent or prejudice plaintiffs from following procedures to apply the exclusion, or from taking measures to keep the liquidation of their entries open until they obtained a corrected exclusion.  Plaintiffs' contentions that "no workable avenue for redress existed" (Pls. Resp. at 19) and that they "could not correct the error before final liquidation" (Pls. Resp. at 30) are inaccurate.  The fact is that plaintiffs never attempted to apply the approved exclusion to their entries and instead entered the merchandise as subject to Section 232 duties, paid those duties, and allowed the liquidation of their entries to become final.

## III.  PLAINTIFFS' STATED CLAIM DOES NOT LEAD TO THE REFUND OF SECTION 232 DUTIES

Even if the Court finds subject matter jurisdiction over the complaints, plaintiffs' claim of a defective exclusion is still not appropriately tied to the remedy of a refund of duties.  In our papers, we moved to dismiss this case for failure to state a claim upon which relief can be granted because we could not discern from the allegations in the complaints whether plaintiffs' claim was against Commerce or CBP, which has a bearing on the remedy requested.  Plaintiffs now clarify that their claim is to Commerce's approval of their exclusion containing an invalid tariff number.  Pl. Resp. at 3.  However, a refund of duties does not follow from this stated cause of action.

As explained, the exclusion process involves two separate agency actions that form the basis of different claims with different relief.  CBP's liquidation of entries with Section 232

duties is a protestable CBP decision, and if denied, jurisdiction would lie in this Court under Section 1581(a).  In such a case, reliquidation of the entries would be appropriate if plaintiffs prevailed.  However, because plaintiffs did not file a protest, the liquidation of their entries with Section 232 duties became final and conclusive 180 days after liquidation.  19 U.S.C. § 1514.

Separately, Commerce's action of approving plaintiffs' exclusion with an invalid tariff number is resolved by correcting the tariff number and making the exclusion retroactive to the date when the original exclusion was first effective.  Commerce has now provided that exact relief.  Commerce approves or denies a request for an exclusion, but does not determine if an exclusion applies in the assessment, collection, or refund of duties to particular entries.  Thus, reliquidation of the entries does not result from Commerce's action of approving or denying an exclusion, but rather from CBP's decision with respect to the application of the exclusion to the merchandise in the entries.

The tenuous connection between Commerce's action and the request for refund of duties is especially apparent when considering the circumstances of plaintiffs' situation.  The intervening events between Commerce's approval of the exclusion and CBP's liquidation of the entries casts further doubt that a duty refund is the appropriate outcome in this case.  Between the time of Commerce's approval of the exclusion and CBP's liquidation of the entries with Section 232 duties is a period during which plaintiffs could have acted.  At the time the request was approved in September 2018, Commerce and plaintiffs did not know there was any error.  Yet, plaintiffs claimed their entries were subject to Section 232 duties on the entry documents and deposited those duties. The exclusion that is purportedly the source of their injury was never disclosed or sought to be applied.  Thus, the proximate cause of plaintiffs' injury of the

21

assessment of Section 232 duties was plaintiffs' own actions or inactions and not Commerce's approval of the exclusion whether or not it contained an invalid tariff number.

Despite the disconnect between the wrongful action alleged and the remedy sought, plaintiffs maintain that these entries should be reliquidated and rely on *U.S. Shoe* and *Shinyei*. Pls. Resp. at 30.  These cases are inapposite.  Reliquidation in *Shinyei* was found to be available where Commerce had issued instructions not in conformance with an existing court order and CBP liquidated the entries in accordance with those instructions.  Here, CBP's assessment of Section 232 duties was not the result of Commerce's approved exclusion with an invalid tariff number, but rather the result of plaintiffs' failure to even attempt to use the exclusion.  In *U.S. Shoe*, the role of CBP in collecting the HMT was plainly ministerial and the court's judgment required refund of the HMT paid on exports.  Here, CBP's role in the application of an exclusion is not ministerial; rather an exclusion is distinguished by the fact that the importer of record must seek it through independent action and CBP must decide whether it applies to the merchandise in the entries.

Plaintiffs' theory of causation is based upon a cascading series of "what ifs."  If Commerce had rejected the request upon discovering the invalid tariff number, plaintiffs claim that they could have filed a new request and that the entries would have been exempt from Section 232 duties.  But there is no certainty that those events would have occurred.  The leap in assumption that plaintiffs make is that if Commerce had rejected the request that: (1) plaintiffs would have filed a corrected request in a timely fashion with the valid HTSUS number; (2) Commerce would have approved the exclusion request; and that (3) plaintiffs would actually have used the exclusion.  Here, the error in the exclusion was unknown at the time of the entries in November 2018, and the HTSUS error only became known to plaintiffs in September 2019.

Thus, even if plaintiffs had an exclusion with a correct tariff number, there is still no certainty that plaintiffs would have used it.  Such speculation cannot form the basis for plaintiffs' requested relief.

Plaintiffs' claim could have been resolved through reliquidation had plaintiffs timely protested the liquidation, and CBP denied the protest, and if this Court found fault with CBP's action under section 1581(a).  However, significantly, plaintiffs failed to protect their own interests by filing a timely protest.  This is not a case where dismissal is improper because the complaint simply fails to plead the "technically appropriate remedy," *Doe v. Dep't of Justice*, 753 F.2d 1092, 1104 (D.C. Cir 1985).  Rather, it is clear from plaintiffs' response that their factual allegations of wrongdoing by Commerce do not lead to redressable relief including reliquidation of otherwise finally liquidated entries.  Dismissal under USCIT Rule 12(b)(6) is therefore appropriate.

## **CONCLUSION**

For these reasons and those in our moving papers, we respectfully request that the Court dismiss the complaints in this consolidated action.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Aimee Lee
AIMEE LEE

23

Assistant Director
Department of Justice
Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
Tel: (212) 264-9253

*Attorneys for Defendants*

Of Counsel:

Anthony Saler
Assistant Division Chief
Kenneth S. Kessler
Senior Counsel
Office of the Chief Counsel
Bureau of Industry and Security
U.S. Department of Commerce

Yelena Slepak
Senior Attorney
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

April 19, 2021

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation of Court of International

Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 6,799 words,

excluding the parts of the brief exempted from the word limitation.  In preparing this certificate

of compliance, I have relied upon the word count function of the word processing system used to

prepare the brief.

/s/ Aimee Lee